## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                              BKY 15-60568-MER

Kathy Lynn Petersen,                                Chapter 7

        Debtor.

Daniel M. McDermott, United States Trustee,         Adv. No. 16-06010-MER

        Plaintiff,

    v.

Kathy Lynn Petersen,

        Defendant.

---

## MEMORANDUM DECISION

---

At Fergus Falls, Minnesota, March 10, 2017.

The matter before the Court strikes the heart of bankruptcy relief for an individual debtor: the debtor's discharge. The United States Trustee ("UST") commenced an adversary proceeding against the debtor, Ms. Kathy Lynn Petersen ("Ms. Petersen" or the "Debtor"), seeking the denial of her discharge on three grounds: 11 U.S.C. § 727(a)(2)(A), (a)(2)(B), and (a)(4)(A). Colin Kreuziger represents the UST. Kip Kaler represents Ms. Petersen. For the reasons set forth below, the claims of the UST fail; therefore, the Debtor is entitled to a discharge.

This memorandum decision constitutes the Court's findings of facts and conclusions of law under FED. R. BANKR. P. 7052. The Court has jurisdiction here through 28 U.S.C. §§ 1334 and 157. This matter qualifies as a core proceeding under 28 U.S.C. § 157(b)(2)(J).

### The Factual Overview

On November 18, 2015, Ms. Petersen filed for bankruptcy relief under chapter 7 of the Bankruptcy Code.[1]  Stip. Facts ¶ 2.  She did so in an attempt to extricate herself from the clenching grasp of creditors.  Trial Tr. at 201.  But a release from creditors required her life–from her divorce to criminal prosecution against her–to become exposed.

On May 14, 2013, more than two years before Ms. Petersen filed for bankruptcy, she and her former husband, Chad Petersen, divorced.  Stip. Facts ¶ 3; Pl.'s Ex. 5.  Through their Judgment and Decree for Marriage Dissolution ("divorce decree"), she was awarded a number of assets, including a 1993 Sylvan Sea Troller 16-foot boat ("Sea Troller"), a 2004 Honda Rubicon ATV ("ATV"), and a 500 Arctic Cat snowmobile ("snowmobile").  Id.  These assets, though ostensibly given to Ms. Petersen, were intended for her children, an intention that, in certain respects, was realized.  Trial Tr. at 62-63, 75, 106, 159, 160, 173, 176-79.

Kodi Ysen ("Kodi"), Ms. Petersen's son, dictated, in large part, the fate of the Sea Troller, ATV, and the snowmobile.  On January 7, 2014, Ms. Petersen transferred the Sea Troller to Kodi.  Stip. Facts ¶ 5.  The Sea Troller stayed on the property of Mr. Ysen, Kodi's father.  Trial Tr. at 75, 158.  As for the ATV, sometime in January or February of 2014, Kodi wrecked it.  Trial Tr. at 143.  He sold the ATV's parts, and testified that he did not tell "everything" about the ATV to his mother until after the sale.  Trial Tr. at 144, 146.  As for the snowmobile, its engine blew up on a lake during a family Christmas vacation in 2013.  Trial Tr. at 147.  So, between the time that Ms. Petersen's divorce decree was entered, on May 14, 2013, and the time she filed for bankruptcy, on November 18, 2015, Kodi changed, in large part, the disposition of these assets.

---

[1] Unless stated otherwise, references to the "Bankruptcy Code" or to specific statutory sections, throughout this memorandum decision, are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq*.

Against this backdrop, certain seismic events unfolded in Ms. Petersen's life:  she lost her job, thereby losing substantial income, and she became a defendant in both a civil suit and a criminal prosecution.  From 2007 through December of 2013, she worked for John P. Bailey, of the Bailey Law Offices, Ltd.[2]  Stip. Facts ¶ 4.  While employed there, she earned $68,314.00 a year.[3]  Trial Tr. at 182.  That all ended in December of 2013.  Id.  John P. Bailey fired her.  Id.  He alleged that Ms. Petersen embezzled money from him and Bailey Law Offices, Ltd.  Id.  The next month, on January 13, 2014, John P. Bailey commenced a civil suit against her.  Id.  Fast forward to February 3, 2016, less than a year after Ms. Petersen filed for bankruptcy.  The Beltrami County Attorney charged Ms. Petersen with two felony counts of theft, alleging that, between 2007 and 2013, Ms. Petersen embezzled over $250,000.00 from the Bailey Law Offices, Ltd.  Pl.'s Ex. 4 at 1-2.  These events were unraveled at trial.

**PRELIMINARY ISSUE:  AMENDING THE PLEADINGS TO CONFORM TO THE EVIDENCE**

At trial, the UST moved, under FED. R. BANKR. P. 7015, to conform his pleadings to the evidence.  He wants the snowmobile–property absent from his complaint but brought to ever-growing light through the course of this litigation–to carry force in his pleaded and tried claims under 11 U.S.C § 727(a)(2)(B) and (a)(4)(A).  The UST can do so, because the Debtor's conduct formed implied consent, as detailed below.

Incorporated in FED. R. BANKR. P. 7015 by reference, FED. R. CIV. P. 15(b)(2) sets a procedure for a party to amend pleadings to conform to the evidence:

---

[2] The statement of probable cause in support of the criminal complaint against Ms. Petersen states that she started working for John P. Bailey and the Bailey Law Offices, Ltd., in 1999.  Pl.'s Ex. 4.

[3] When Ms. Petersen filed for bankruptcy, she had a current monthly income in the amount of $1,772.34, according to schedule I.  Pl.'s Ex. 7 at 30.  Her income dropped significantly after her employment terminated.

> When an issue not raised by the pleadings is tried by the parties' express or *implied consent*, it must be treated in all respects as if raised in the pleadings. A party may move--at any time, even after judgment--to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

FED. R. CIV. P. 15 (emphasis added). Rule 15(b) aims "to promote the objective of deciding cases on the merits rather than on the relative pleading skills of counsel." Am. Family Mut. Ins. Co. v. Hollander, 705 F.3d 339, 348 (8th Cir. 2013) (citation omitted). "Thus, amendments under the rule are to be liberally granted where necessary to bring about the furtherance of justice and where the adverse party will not be prejudiced." Id. (citation and internal quotation marks omitted).

By implied consent, a party may amend its pleadings to conform to the evidence. FED. R. CIV. P. 15. Implied consent may take many forms. "[W]here a party has 'actual notice of an unpleaded issue and ha[s] been given an adequate opportunity to cure any surprise resulting from the change in the pleadings[,]'" implied consent exists. Id. at 348 (quoting Kim v. Nash Finch Co., 123 F.3d 1046, 1063 (8th Cir. 1997) (citation and internal quotations marks omitted)). "When facts probative of claims actually alleged in the pleading came into evidence at trial without objection, the factual issues (i.e. the factual allegations that would have saved the complaint from being deficient) were tried by implied consent of the parties." Yadidi v. Herzlich (In re Yadidi), 274 B.R. 843, 851-52 (B.A.P. 9th Cir. 2002); see also Modern Leasing, Inc. of Iowa v. Falcon Mfg. of Cal. Inc., 888 F.2d 59, 63 (8th Cir. 1989); NLRB v. Merrill, 388 F.2d 514, 519 (10th Cir. 1968) (employing FED. R. CIV. P. 15(b) to correct facts misstated in pleadings). The Eighth Circuit has held that "a party will be deemed to have acquiesced in trying an unpleaded issue when the issue is 'not inconsistent with' the position taken by the non-moving party earlier in the proceedings." Hollander, 705 F.3d at 348 (citations omitted).

The Debtor's conduct throughout the course of this matter constituted implied consent. The UST's complaint collapsed the description of the ATV and the snowmobile into: "2004 Honda Arctic Cat ATV."  ECF No. 1.  A collapsed description likewise appeared in the Debtor's amended statement of financial affairs, as well as correspondence from the Debtor's attorney to the UST.  See Def.'s Ex. C at 16 (describing property as "Arctic Cat 4-wheeler" in the Debtor's amended statement of financial affairs); Def.'s Ex. I (correspondence).  The snowmobile appeared as "500 Arctic Cat snowmobile" in the Debtor's and UST's stipulation of facts.  Stip. Facts ¶ 3.  The UST's trial brief discussed the snowmobile.  Pl.'s Trial Br. at 2-4, 9-13, 17.  At trial, the Debtor remained silent during the UST's case-in-chief as to the snowmobile.  Only after implied consent formed–through, among other things, awareness of the snowmobile in relation to the UST's claims, and failure to object to facts probative of claims– did the Debtor disrupt her pervasive silence about the snowmobile when she sought judgment on partial findings. [4]  Trial Tr. at 108.  Therefore, the Debtor impliedly consented here, without prejudice.

The Debtor contradicts her own argument that the amendment would cause prejudice to her.  At trial, the Debtor's attorney argued, "There is prejudice.  You're bringing another thing at the last minute.  That's inappropriate."  Trial Tr. at 131.  Later, however, the concern for "bringing another thing at the last minute" seemed to vanish, when the Debtor's attorney said, "I'm *not concerned* about the amendment.  I mean you heard what happened with the snowmobile, and so to the extent that they want to amend it's kind of pointless . . . ."  Trial Tr. at 219-20 (emphasis added).  Not only was the snowmobile not brought in at the "last minute," the Debtor contradicted herself in terms of showing prejudice.  Therefore, she has not established that she has been prejudiced.

---

[4] The motion for judgment on partial findings, under FED. R. BANKR. P. 7052, is now moot, given that the UST's motion to conform his pleadings to the evidence has been granted.

For those reasons, the UST's motion to conform his pleadings to the evidence, under FED. R. CIV. P. 15, is **GRANTED**.

## ISSUES

Is the Debtor entitled to a general discharge of her debt?

      I.        The UST's cause of action under § 727(a)(2)(A).

     II.        The UST's cause of action under § 727(a)(2)(B).

    III.        The UST's cause of action under § 727(a)(4)(A).

## DENIAL OF DISCHARGE, GENERALLY

For individuals, "The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" Marrama v. Citizens Bank of Mass., 549 U.S. 365, 367 (2007) (citing Grogan v. Garner, 498 U.S. 279, 296 (1991)); see also Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934).  The discharge of a debtor's pre-petition indebtedness brings about in large part the "fresh start."  See  McDermott v. Crabtree (In re Crabtree), 554 B.R. 174, 191 (Bankr. D. Minn. 2016) (citations omitted), *rev'd in part, remanded in part on other grounds*, 562 B.R. 749 (B.A.P. 8th Cir. 2017).  Congress has described this powerful relief as "the heart of the fresh start provisions of the bankruptcy law."  S. REP. NO. 95-989, at 98 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5884.  By the debtor's own doing, however, the "heartbeat" of the "fresh start provisions" may stop, because the discharge provision of § 727 has limits.

A statutory extremity places limits:  a denial of discharge through any of the twelve grounds in § 727.  11 U.S.C. § 727(a)(1)–(12).  The severe and extreme nature of a denial of discharge forces courts to strictly and narrowly construe the provisions of § 727 in favor of a debtor.  Kaler v. Charles (In re Charles), 474 B.R. 680, 683 (B.A.P. 8th Cir. 2012) (citation omitted).

6

One who seeks a denial of discharge must prove each element of a § 727 claim by a preponderance of the evidence.  Id. at 683-84 (citing Allred v. Vilhauer (In re Vilhauer), 458 B.R. 511, 514 (B.A.P. 8th Cir. 2011); FED. R. BANKR. P. 4005).  On that note, "[t]he grounds for denial of discharge must be proven specifically, and the proof must be directed at the transfer or concealment alleged; a debtor should not be denied a discharge on general equitable considerations."  Rouse v. Stanke (In re Stanke), 234 B.R. 449, 456 (Bankr. W.D. Mo. 1999) (citing Rice v. Matthews, 342 F.2d 301, 304 (5th Cir. 1965); Gross v. Fid. & Deposit Co. of Md., 302 F.2d 338, 340 (8th Cir. 1962)).  "The reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural."  Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir. 1987) (quoting Dilworth v. Boothe, 69 F.2d 621, 624 (5th Cir. 1934)). But even when grounds for denial of discharge are shown, the court, in general, holds the discretion to grant a discharge.  See, e.g., Union Planters Bank, N.A. v. Connors, 283 F.3d 896, 901 (7th Cir. 2002) (quoting Miami Nat'l Bank v. Hacker (In re Hacker), 90 B.R. 994, 997 (Bankr. W.D. Mo. 1987)); see also McVay v. DiGesualdo (In re DiGesualdo), 463 B.R. 503, 523 n.106 (Bankr. D. Colo. 2011) (collecting cases, and reasoning that although § 727 compels the discharge of a debtor's debt, it does not compel a denial of discharge).

On one hand, the denial of discharge is a harsh result.  Vilhauer, 458 B.R. at 514.  Section 727 intends to aid the prevention of bankruptcy abuse by debtors.  Charles, 474 B.R. at 683.  On the other hand, a discharge in bankruptcy and the associated fresh start, are privileges, not rights. Bauer v. Iannacone (In re Bauer), 298 B.R. 353, 357 (B.A.P. 8th Cir. 2003) (citing Grogan v. Garner, 498 U.S. at 286).

### I.   DENIAL OF DISCHARGE UNDER § 727(a)(2)(A): CONDUCT PRE-PETITION

Here, the UST seeks a denial of the Debtor's discharge under 11 U.S.C. § 727(a)(2)(A),

because, in his eyes, she concealed the transfer of the Sea Troller to Kodi, a transfer that

occurred two months shy of two years before she filed for bankruptcy.

The party seeking a denial of discharge must prove four elements:  (1) that the act

complained of was done within one year before the petition date; (2) the act was that of the

debtor; (3) the act consisted of a transfer, removal, destruction or concealment of the debtor's

property; and (4) the act was done with an intent to hinder, delay, or defraud either a creditor or

an officer of the estate.  11 U.S.C. § 727(a)(2)(A); see Kaler v. Craig (In re Craig), 195 B.R. 443,

449 (Bankr. D.N.D. 1996).

#### ONE YEAR BEFORE THE PETITION DATE AND CONTINUING CONCEALMENT

Although the first element of § 727(a)(2)(A)–one of the focuses of this claim–requires the

act to have occurred a year before the petition date, the doctrine of continuing concealment

makes that date not as absolute as it appears.  "[C]oncealment is a continuing event and under the

established doctrine of 'continuing concealment,' a concealment that originated outside the one

year limitation period is within the reach of § 727(a)(2)(A) if the concealment continued on into

the year preceding the filing coupled with the requisite intent."  Korte v. United States (In re

Korte), 262 B.R. 464, 472 (B.A.P. 8th Cir. 2001) (citations omitted); but see, Small v. Bottone

(In re Bottone), 209 B.R. 257, 262-63 (Bankr. D. Mass. 1997) (recognizing the friction between

the doctrine of continuing concealment and the requirement for courts to narrowly construe §

727(a)(2) in furtherance of a fresh start).  Typically, asset concealment exists "where the interest

of the debtor in property is not apparent but where actual or beneficial enjoyment of that property

continued."  Id.  "What is critical under the concealment provision of § 727(a) is whether there is

8

concealment of *property,* not whether there is concealment of a transfer." Rosen v. Bezner, 996

F.2d 1527, 1532 (3d Cir. 1993).

Under the doctrine of continuing concealment, the UST argues that Ms. Petersen's

transfer of the Sea Troller to Kodi on January 7, 2014–more than one year before she filed for

bankruptcy on November 18, 2015–and the concealment of that transfer, is enough to deny Ms.

Petersen's discharge under § 727(a)(2)(A). However, an assessment of the UST's arguments, in

light of strictly and narrowly construing § 727 in favor of the Debtor, shows a failure to carry his

burden of showing that a concealment originating outside the one-year period can sustain a §

727(a)(2)(A) action here, for at least two reasons.

First, the UST took a fatal misstep in his analysis of showing a continual concealment,

and accordingly, he left his § 727(a)(2)(A) claim go astray. He argues that the transfer of the Sea

Troller "bears most of the hallmarks of continuing concealment outlined in *Craig*."[5]  Pl.'s Trial

Br. at 8; Pl.'s Post-Trial Br. at 11. A closer look at Craig, however, reveals that the "hallmarks"[6]

relied upon by the UST to argue a continuing concealment of a transfer spoke only of intent for

purposes of establishing a continuing concealment; other requirements must be shown to

establish a continuing concealment. 195 B.R. at 450. Indeed, the court in Craig prefaced these

"hallmarks" as:

> An intent to defraud is rarely susceptible of direct proof. However, it can be
> established by circumstantial evidence or from inferences drawn from a debtor's

---

[5] *Craig* refers to Kaler v. Craig (In re Craig), 195 B.R. 443 (Bankr. D.N.D. 1996).

[6] What the UST casts as "hallmarks" are:  (1) an absence or negligible amount of consideration;
(2) the debtor and the transferee enjoy a family, friendship or other close relationship; (3) the
debtor retains possession, benefit or use of the property in question; (4) the debtor engaged in a
sharp pattern of dealing immediately before the bankruptcy; (5) the transfer occurred after a large
judgment; (6) the concealment of the transfer. Craig, 195 B.R. at 450 (citing McDonough v.
Erdman (In re Erdman), 96 B.R. 978, 985 (Bankr. D.N.D. 1988) (describing these factors as
"indicia or 'badges of fraud'" to form intent)).

course of conduct.  This same indicia of intent sufficient to establish a fraudulent
transfer may also *serve as an indicia of intent* for purposes of establishing that
there was an active and ongoing concealment.  In past cases this court has
regarded the following as indicia of an intent to hinder, delay or defraud creditors.

Id. (emphasis added).  By misplacing an analysis to show continuing concealment on an inquiry

of intent, the UST failed to carry his burden of proof that Ms. Petersen committed a continual

concealment.  In other words, the UST asked the wrong question and gave the wrong answer for

purposes of § 727(a)(2)(A); and that's not all.

Second, the UST's claim here is out of focus, because he gazes intently on the

concealment of a transfer, rather than on the concealment of property.  See Rosen, 996 F.2d at

1532 ("What is critical under the concealment provision of § 727(a) is whether there is

concealment of *property,* not whether there is concealment of a transfer.").  To illustrate, the

UST stated, "the Court should conclude that, notwithstanding the actual transfer of title, Ms.

Petersen engaged in *continuing concealment of the transfer*."  Pl.'s Trial Br. at 8; Pl.'s Post-Trial

Br. at 12 (emphasis added).  Thus, the focus of the UST's § 727(a)(2)(A) claim unfittingly rested

on the transfer of property, rather than on the concealment of property.

For those reasons, and strictly and narrowly construing § 727(a)(2)(A) in favor of the

Debtor, the UST has failed to carry his burden.  Thus, his § 727(a)(2)(A) claim fails.

## II.    DENIAL OF DISCHARGE UNDER § 727(a)(2)(B): CONDUCT POST-PETITION

Under § 727(a)(2)(B), the UST seeks denial of the Debtor's discharge.[7]  In the view of

the UST, the Debtor is unworthy of a discharge, because she either concealed the ATV and the

---

[7] Because the Court has ultimately determined that the Debtor did not conceal assets, the Court,
under the doctrine of judicial restraint, need not decide whether either the ATV or the
snowmobile is property of the estate, or whether the requisite intent for § 727(a)(2)(B) exists.
See Dehart v. Lopatka (In re Loptaka), 400 B.R. 433, 440 (Bankr. M.D. Pa. 2009) ("The doctrine
of judicial restraint suggests that a court should decide the fewest issues necessary to resolve the
subject dispute.") (citing Morse v. Frederick, 551 U.S. 393, 431 (2007); PDK Labs, Inc. v. DEA,
362 F.3d 786, 799 (D.C. Cir. 2004)).

snowmobile, or concealed the transfers of those assets from the chapter 7 trustee. The UST, for

this claim under § 727(a)(2)(B), points to the omission in the Debtor's schedule B, as well as her

failure to disclose information about the ATV and the snowmobile at her meeting of creditors.

The elements of § 727(a)(2)(B) are the same as the elements of § 727(a)(2)(A), except

that the conduct must occur post-petition and must involve property of the estate. Strauss v.

Brown (In re Brown), 531 B.R. 236, 258 (Bankr. W.D. Mo. 2015) (citation omitted). Relevant

here, "concealment entails the transfer of title while retaining some of the benefits of

ownership." In re Stanke, 234 B.R. at 457 (citing Thibodeaux v. Olivier (In re Olivier), 819 F.2d

550, 553-54 (5th Cir. 1987); Cullen Center Bank & Trust v. Lightfoot (In re Lightfoot), 152 B.R.

141, 146-47 (Bankr. S.D. Tex. 1993)). Asset concealment typically exists "where the interest of

the debtor in property is not apparent but where actual or beneficial enjoyment of that property

continued." In re Korte, 262 B.R. at 472 (citations omitted). "Concealment is also present when

it looks as if the debtor has no interest in the property while in reality the debtor retains an

interest from which he or she benefits." First Am. Bank v. Andrews (In re Andrew), 540 B.R.

379, 384 (Bankr. S.D. Iowa 2015) (citation omitted).

A comparison of the UST's arguments against the available factual record indicates that

he failed to carry his burden. The UST argues that the Debtor concealed assets from the chapter

7 trustee by failing to disclose her ownership interest of both the ATV and the snowmobile on

schedule B, or in the alternative, that she didn't disclose her transfer of the ATV and

snowmobile. Pl.'s Trial Br. at 12-13; Pl.'s Post-Trial Br. at 16. The UST believes she did so

with the requisite intent. Id. But by the time the Debtor filed for bankruptcy, on November 18,

2015, Kodi had already wrecked the ATV in early 2014, sold its parts, and kept the proceeds of

that sale. Trial Tr. at 144-46. Similarly, in 2013, the engine of the snowmobile blew up. Trial

Tr. at 147.  Based on this comparison, a glaring abyss in the UST's claim is exposed, namely, the lack of any benefit to the Debtor.

Specifically, the UST has fallen short of carrying his burden of proof; he failed to show that the Debtor's actual or beneficial enjoyment of the property, after the transfers, continued, or that she benefited from her interest in the property.  Also, to the extent that the Debtor concealed a transfer of either the ATV or the snowmobile, what matters to show concealment under § 727(a) "is whether there is concealment of *property,* not whether there is concealment of a transfer."  Rosen, 996 F.2d at 1532.  Therefore, the UST failed to establish a concealment of assets.

For those reasons, and strictly and narrowly construing § 727(a)(2)(B) in favor of the Debtor, the UST has failed to carry his burden.  Thus, his § 727(a)(2)(B) claim also fails.

### III.    DENIAL OF DISCHARGE UNDER § 727(a)(4)(A): FALSE OATH OR ACCOUNT

A denial of discharge under § 727(a)(4)(A) requires the objecting party to prove:  (1) the debtor made a statement under oath; (2) that statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with a fraudulent intent; and (5) the statement related materially to the debtor's bankruptcy case.  Lincoln Sav. Bank v. Freese (In re Freese), 460 B.R. 733, 738 (B.A.P. 8th Cir. 2011) (quoting Fokkena v. Juehring (In re Juehring), 332 B.R. 587, 591 (Bankr. N.D. Iowa 2005)); 11 U.S.C. § 727(a)(4)(A).

"The effectiveness of the bankruptcy system depends on the Debtor's complete candor, and it is not the job of the trustee or creditor to search for information about the Debtor that should be readily disclosed in his bankruptcy Schedules and Statements."  In re Freese, 460 B.R. at 739.  The Bankruptcy Code "requires nothing less than a full and complete disclosure of any

and all apparent interests of any kind." In re Korte, 262 B.R. at 474 (quoting Fokkena v. Tripp (In re Tripp), 224 B.R. 95, 98 (Bankr. N.D. Iowa 1998)).

Nevertheless, "[c]ompletely denying a debtor his discharge, as opposed to avoiding a transfer or declining to discharge an individual debt pursuant to § 523, is an extreme step and should not be taken lightly." Rosen, 996 F.2d at 1531.

As detailed below, although the Debtor made false statements under oath, the UST failed to carry his burden. Specifically, he failed to show that the Debtor knew the statements were false, that her statements were made with a fraudulent intent, and that the statements related materially to her case.

### THE STATEMENTS WERE MADE UNDER OATH

"Statements made in schedules are signed under penalties of perjury and have 'the force and effect of oaths,' and testimony elicited at the first meeting of creditors is given under oath." In re Korte, 262 B.R. at 474 (quoting Golden Star Tire, Inc. v. Smith (In re Smith), 161 B.R. 989, 992 (Bankr. E.D. Ark. 1993)) (citing March v. Sanders (In re Sanders), 128 B.R. 963 (Bankr. W.D. La. 1991)).

The Court agrees with the UST that the following statements were made under oath:

- On schedule B, Ms. Petersen omitted her ownership interest in the ATV and the Arctic Cat.

- On the statement of financial affairs, Ms. Petersen omitted the transfer of the Sea Troller.

- On the statement of financial affairs, Ms. Petersen omitted the transfer of the ATV and the Arctic Cat (to the extent either were [sic] transferred).

Pl.'s Post-Trial Br. at 21-22 (citations to the record omitted); see also, Pl.'s Trial Br. at 17.

Additionally, the Court agrees with the UST that the following testimony of the Debtor at her meeting of creditors was made under oath: that she listed all of her assets on her bankruptcy

13

schedules, that she did not own any assets of any sort that were not listed on her bankruptcy

schedules, and that she did not own any motor vehicles.

THE STATEMENTS WERE FALSE IN CERTAIN RESPECTS

"Whether a debtor made a false oath under section 727(a)(4)(A) is a question of fact."

Keeney v. Smith (In re Keeney), 227 F.3d 679, 685 (6th Cir. 2000) (citing Williamson v.

Fireman's Fund Ins. Co., 828 F.2d 249, 251 (4th Cir. 1987)).  Denial of the debtor's discharge

takes more than an honest mistake or oversight by the debtor.  Giansante & Cobb, LLC (In re

Singh), 433 B.R. 139, 154 (Bankr. E.D. Pa. 2010) (citation omitted).

A recipient of the statements made under oath, who has no previous knowledge about the

Debtor, would not know that the Debtor held any connection to the Sea Troller, ATV, and

snowmobile.  A discussion of the false statements in relation to each of these items unravels their

claimed falsity.

*THE FALSE STATEMENT ABOUT THE SEA TROLLER*

The Debtor made a false statement regarding the Sea Troller.  The parties stipulated that

she transferred the Sea Troller to Kodi on January 7, 2014.  Stip. Facts ¶ 5.  Less than two years

later, on November 18, 2015, the Debtor filed for bankruptcy.  In her statement of financial

affairs, she omitted the transfer of the Sea Troller from question 10, which states:  "List all other

property, other than property transferred in the ordinary course of the business or financial affairs

of the debtor, transferred either absolutely or as security within **two years** immediately preceding

the commencement of this case."  Ex. 7 at 40.  She did not list the transfer of the Sea Troller that

14

occurred within two years before filing for bankruptcy.  Thus, the omission of the Sea Troller

from her statement of financial affairs qualifies as a false statement under oath.[8]

### THE POTENTIAL FALSE STATEMENTS ABOUT THE ATV AND SNOWMOBILE

The UST also considers the following a false statement:  the omission of both the ATV

and the snowmobile from the Debtor's schedule B, or in the alternative, the omission of the

transfers of the ATV and the snowmobile from her statement of financial affairs.  This is the

same ATV that Kodi wrecked sometime in January or February of 2014, and the same

snowmobile with a blown up engine.

The Sea Troller and ATV were awarded to the Debtor through her divorce decree.  Stip.

Facts ¶ 3.  Kodi wrecked the ATV sometime in January or February of 2014.  Trial Tr. at 143.

He sold the ATV's parts, and testified that he did not tell "everything" about the ATV to his

mother until after the sale.  Trial Tr. at 144, 146.  As for the snowmobile, its engine blew up on a

lake during a family Christmas vacation in 2013.  Trial Tr. at 147.

The Debtor's ownership of the assets remained intact or dispossessed[9] through, for

example, transferring the ATV and snowmobile.  The record fails to show that the Debtor

relinquished her ownership interest.  If her ownership remained, then she made a false statement

by omitting her ownership interest in the ATV and the snowmobile in her schedule B.  Likewise,

her testimony at her meeting of creditors would be false, because she testified that she listed all

of her assets on her schedules when she did not do so, and because she testified that she did not

own any assets of any sort that were not listed on her schedules.  If the Debtor transferred the

---

[8] On September 20, 2016, the Debtor filed an amended statement of financial affairs, which
stated:  "Debtor transferred to son Kodi Ysen of Bagley, MN title interest only to a 1993 Sylvan
boat."  Def.'s Ex. C at 15.

[9] The Debtor steadfastly holds to her position that she did not own the ATV and the snowmobile
when she filed for bankruptcy.  In support, she believes her view of the property determines
ownership interest.  This is unavailing.

ATV and the snowmobile, however, the Court remains in the dark about when, if at all, those

transfers occurred.  Without knowing when those transfers occurred, it is impossible to

determine whether the Debtor committed a false statement by omitting transfers from her

statement of financial affairs, because the record doesn't answer a conceivable situation of the

Debtor transferring the ATV and snowmobile more than two years before filing for bankruptcy.

If the transfers occurred more than two years before this bankruptcy commenced, then the

Debtor would not need to include those transfers in her statement of financial affairs; she would

only need to list these sorts of transfers that occurred two years before filing for bankruptcy.

Therefore, to the extent the Debtor owns the ATV and snowmobile, she committed a false oath,

but to the extent the Debtor transferred the ATV and snowmobile, the Court is left in the dark to

determine whether the omission of such transfer constitutes a false oath.

### KNOWLEDGE OF THE FALSE STATEMENTS

The element of a debtor's knowledge for purposes of a § 727(a)(4)(A) claim remains a

question of fact.  Cepelak v. Sears (In re Sears), 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000).  A

debtor "acts knowingly if he or she acts deliberately and consciously." Roberts v. Erhard (In re

Roberts), 331 B.R. 876, 883-84 (B.A.P. 9th Cir. 2005) (citation omitted).  An act done carelessly

or recklessly falls below the standard for an act done knowingly.  Id. at 884.  "The elements of

'knowingly' and 'fraudulently' may not be conflated.  They each must be proven." Olympic

Coast Inv. v. Wright (In re Wright), 364 B.R. 51, 76 (Bankr. D. Mont. 2007) (citation omitted);

but see In re Chavin, 150 F.3d 726, 728 (7th Cir. 1998) ("Chavin concedes . . .  that not caring

whether some representation is true or false—the state of mind known as 'reckless disregard'—

is, at least for purposes of the provisions of the Bankruptcy Code governing discharge, the

equivalent of knowing that the representation is false and material.").

The UST has not addressed the knowledge element of § 727(a)(4)(A).  Indeed, nothing in either his trial brief or his post-trial brief mentions anything regarding whether the Debtor deliberately and consciously, i.e., knowingly, made false statements under oath.  Perhaps the UST thought the fulfillment of this element was self-evident.  At most, it appears that the UST conflated the elements of "knowingly" and "fraudulently," two separate though related inquiries under § 727(a)(4)(A).  "They each must be proven."  Id.

Therefore, the UST failed to show that the Debtor *knowingly* made a false statement under oath.

FRAUDULENT INTENT

As with knowledge, a debtor's intent under § 727(a)(4)(A) is a question of fact.  In re Sears, 246 B.R. at 347.  "Intent 'can be established by circumstantial evidence,' and 'statements made with reckless indifference to the truth are regarded as intentionally false.'"  In re Korte, 262 B.R. at 474 (citations omitted).  "To that end, courts are often understanding of a single omission or error resulting from innocent mistake.  However, multiple inaccuracies or falsehoods may rise to the level of reckless indifference to the truth, which is the functional equivalent of intent to deceive."  Jordan v. Bren (In re Bren), 303 B.R. 610, 613 (B.A.P. 8th Cir. 2004) *overruled on other grounds*, Jordan v. Bren (In re Bren), 331 B.R. 797 (B.A.P. 8th Cir. 2005).  "A debtor's subsequent disclosure of an asset does not absolve a debtor from an initial omission, but depending on the circumstances, it may be evidence of innocent intent."  Ellsworth v. Bauder (In re Bauder), 333 B.R. 828, 831 (B.A.P. 8th Cir. 2005) (footnote omitted).

The UST argues that the Debtor's false statements made under oath were done with a fraudulent intent.  He points to several circumstances that, to him, indicate so.  One, to the UST, the Debtor's several false statements, when viewed together, show a reckless disregard of the

17

truth, the functional equivalent of a fraudulent intent under § 727(a)(4)(A).  Two, the UST finds

his effort to wrest information from the Debtor about these assets as support to show fraudulent

intent.  Three, in the UST's view, the Debtor's transfer of the Sea Troller to Kodi immediately

after she was fired indicates fraudulent intent.[10]  Four, the UST equates a concern about

collection efforts regarding the alleged embezzlements as support for this element.  Fifth, the

UST points to the Debtor's awareness of the whereabouts of the ATV and snowmobile as

additional support.  And lastly, in a tautological fashion, that her failure to disclose information

shows intent.

However, the weight of evidence militates against a showing of fraudulent intent.  Quite

credibly, the Debtor and her children explained that the Sea Troller, the ATV, and snowmobile

were meant for the Debtor's children.[11]  Those assets, awarded to the Debtor through a divorce

decree, stayed on the property of her children's father, except for presumably the ATV when, at

a later date, its parts were sold.  Trial Tr. at 75, 143-44.  Those assets were treated as assets of the

children, as shown by the extent of Kodi's use of each of those assets.  Furthermore, the Debtor's

world rapidly changed, as marked by her divorce, job termination, and becoming a defendant in

both a civil suit and a criminal prosecution.  These facts weaken a showing of fraudulent intent.

---

[10] The transfer occurred before the Debtor's employer commenced civil action against her, and years before the State of Minnesota began to prosecute her on criminal charges.  On January 7, 2014, the Debtor transferred the Sea Troller to Kodi.  On January 13, 2014, John P. Bailey commenced a civil suit against her.  On February 3, 2016, Beltrami County Attorney charged Ms. Petersen with two felony counts of theft.

[11] The Court accorded the parties' testimonies their measured credit due.  Cf.  United States v. Borger, 7 F. 193, 199 (C.C.S.D.N.Y. 1881) ("The credit due to testimony is to be measured, in part, by the interest or bias of the witness, which may sway him to pervert the truth, and by his manner and deportment in delivering his testimony; and a jury, in weighing testimony, have a right to consider the consistency of the different parts of a narration, and the possibility and probability, or impossibility or improbability, of the matters related.").

Therefore, the UST failed to show that the Debtor made false statements under oath with the requisite fraudulent intent.

MATERIALITY

The UST must also prove, under § 727(a)(4)(A), that the false statements at issue were material.  Lincoln Sav. Bank v. Freese (In re Freese), 460 B.R. 733, 738 (B.A.P. 8th Cir. 2011). Courts in the Eighth Circuit have characterized the threshold for materiality as fairly low.  Kaler v. Charles (In re Charles), 474 B.R. 680, 686 (B.A.P. 8th Cir. 2012).  "The subject matter of a false oath is 'material' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property."  Id. (citations omitted).  "The value of omitted assets is relevant to materiality, but materiality will not turn on value."  In re Sears, 246 B.R. at 347 (citing Palatine Nat'l Bank v. Olson (In re Olson), 916 F.2d 481, 484 (8th Cir. 1990)).  "An omission of a relatively modest asset will merit denial of discharge, if done with knowledge and fraudulent intent."  Id.  (citing Mertz v. Rott, 955 F.2d 596, 498 (8th Cir. 1992)).

A review of facts and a failure to provide a factually substantiated explanation shows a lack of materiality in the Debtor's false statements made under oath.  Although materiality does not turn on value, value plays a relevant role.  Here, the UST reveres the value in the divorce decree of $4,000.00 collectively attached to those assets.  However, the divorce decree was entered on May 14, 2013, more than two years before the Debtor filed for bankruptcy. Circumstances change; so do values.  By the time the Debtor's bankruptcy case was commenced, no evidence was presented to show the value of each piece of property as it existed on November, 18, 2015.  More fundamentally, the UST failed to show how these false oaths are material.  In rather cursory fashion, "Finally, the Court should find that the false oaths were

material.  The false oaths clearly related to Ms. Petersen's business transactions or estate, they

concern the discovery of assets, and the existence and disposition of Ms. Petersen's property."

Pl.'s Post-Trial Br. at 23-24; Pl.'s Trial Br. at 18.  What remains unanswered is, how so?

Therefore, the UST failed to show that the Debtor's false statements made under oath

were material.

### FIFTH AMENDMENT

At trial, Ms. Petersen invoked her Fifth Amendment privilege against self-incrimination.

Her daughter, Tiara Goodwin, also did so.  From that, the UST asks the Court to make the

following adverse inferences:

- In this instance, the inference to be drawn is that Ms. Petersen stole funds from The Bailey Law Firm, beginning in 2007.

- In 2007, Ms. Petersen began stealing funds from The Bailey Law Office.

- Between 2007 and 2013, Ms. Petersen continued to steal funds from The Bailey Law Office.

- Ms. Petersen stole in excess of $250,000.00 from The Bailey Law Firm.

- In text messages sent on New Years' Eve of 2013, Ms. Petersen referred to herself as a criminal and indicated that she knew she would be in prison for at least a year as a result of her theft from The Bailey Law Firm.

- At least as early as New Years' Eve 2013, Ms. Petersen knew she would be arrested because of the theft that she had committed.

- Ms. Petersen is planning on pleading guilty to the theft charges that are currently pending against her.

Pl.'s Post-Trial Br. at 4 n.2, 24-26 (citations to the record omitted).  This appears to be more than

a request to draw adverse inferences; rather, it appears to request a prognostication by the Court–

which is misplaced.

The court in In re Hernandez explained when a court may draw an adverse inference based on a witness's invocation of her Fifth Amendment privilege against self-incrimination:

> The finder of fact in a civil action is permitted to draw an adverse inference when a witness invokes the Fifth Amendment privilege against self-incrimination. Baxter v. Palmigiano, 425 U.S. 308, 318, 96 S. Ct. 1551, 47 L. Ed. 2d 810 (1976); Rosebud Sioux Tribe v. A & P Steel, Inc., 733 F.2d 509, 521 (8th Cir. 1984).  Because bankruptcy proceedings are civil actions, an adverse inference may be drawn from the invocation of the Fifth Amendment by a witness in bankruptcy court.  As the Bankruptcy Court observed, before making the inference, however, other evidence must tend to prove each element of the case. In re Curtis, 177 B.R [717, 720 (Bankr. S.D. Ala. 1995)].  When other proof of each element is offered, the trier of fact may add the adverse inference to the weight of evidence.  Id.

552 B.R. 750, 771 (D. Minn. 2016).

As shown above, the UST's evidence failed to establish all of the elements of each of his causes of action.  Consequently, there is no basis on which to draw an adverse inference against the Debtor.

### CONCLUSION

In light of construing the provisions of § 727(a) in favor of the Debtor, the UST has failed to establish, by a preponderance of the evidence, his claims under 11 U.S.C. § 727(a)(2)(A), (a)(2)(B), and (a)(4)(A).

Accordingly,

**IT IS ORDERED** that the Debtor's discharge will not be denied under 11 U.S.C. § 727(a)(2)(A), (a)(2)(B), or (a)(4)(A).

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   *March 10, 2017*

*/e/ Michael E. Ridgway*

United States Bankruptcy Judge

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on 03/10/2017
Lori Vosejpka, Clerk, by MJS